Gail H. Stone, Executive Director Arkansas State Police Retirement System One Union National Plaza 124 West Capitol Little Rock, AR 72201
Dear Ms. Stone:
I am writing in response to your request for my opinion on a question arising from the following reported facts:
 During the course of the last legislative session, two bills were introduced targeting the Arkansas State Police Retirement System (ASPRS) Deferred Retirement Option Plan (DROP). Senate bill 107 (later Act 1024) was a board-supported initiative, introduced by Senator Faris, whose goal was to prospectively curb the excessive interest rate calculation used for member accounts. This bill amended § 24-6-304 in recognition of the existing fiscal stresses on the retirement plan, and was one way to curtail potentially large lump sum distributions from the system. SB 107 was introduced on January 19, 2005 and became Act 1024 on March 18, 2005. . . .
 Roughly simultaneously, on January 24, 2005, SB 155 whose intent was to extend the ASPRS DROP from five (5) years to seven (7) years was introduced by Sen. Hill. In the initial language of the bill, only § 24-6-306 was referenced — not § 24-6-304 which contains the provisions for the interest calculation. . . . Then, in an effort of compromise on March 18, 2005, Sen. Hill further amended his bill by amending 24-6-304 as it existed to say that the two (2) additional years of DROP credit could only earn a maximum interest rate of the actuarial investment assumption of 7.75% . . . rather than the existing calculation which specified the greater of the market rate of return less 2%, or 7.75%. Late in the session, SB 155 moved through both houses of the legislature and became Act 1969 on April 11, 2005.
 Only upon receipt of the 2005 Supplement to title 24 did we learn that the Code Revision Commission has determined that these two acts are irreconcilably at odds, and therefore the later act would prevail "because it was clearly the intent of the sponsoring senator." We would argue that, because the senator did not amend the new law, Act 1024, but simply used existing code so as to insert his compromise amendment, his override of Act 1024 was inadvertent. Had he wanted to decisively eliminate what was now the law, he would have inserted "strike-through" deletions and underscored replacement language amending Act 1024 on March 18, 2005.
 We would further argue that both pieces of legislation can peacefully co-exist without compromise or perversion of their respective intents.
Against this backdrop, you have posed a question I will paraphrase as follows:
 Are the provisions of Acts 1024 and 1969 of 2005 completely irreconcilable, rendering the earlier act repealed by implication, as determined by the Code Revision Commission, or can both pieces of legislation co-exist without compromise or perversion of their respective intents?
 RESPONSE
In my opinion, the Arkansas Code Revision Commission was correct in concluding that the two acts are irreconcilable and that only the latter should be given effect.
Act 1024 of 2005 provides:
For An Act To Be Entitled
 AN ACT TO CHANGE THE RATE OF INTEREST EARNED ON THE ARKANSAS STATE POLICE OFFICERS DEFERRED OPTION PLAN; AND FOR OTHER PURPOSES.
Subtitle
 AN ACT TO CHANGE THE RATE OF INTEREST EARNED ON THE ARKANSAS STATE POLICE OFFICERS DEFERRED OPTION PLAN.
 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code § 24-6-304 is amended as follows:
 24-6-304. Benefits — Rate of return.
 (a) The member's monthly retirement benefit shall not change unless the Arkansas State Police Officers Deferred Option Plan receives a benefit increase.
 (b)(1) A member who participates begins participation in this plan prior to the effective date of this Act of 2005 shall earn interest at a rate of two (2) percentage points below the rate of return of the investment portfolio of the State Police Retirement System, but no less than the actuarially assumed interest rate as certified by the actuary.
 (2) A member who first participates in the deferred option plan on or after the effective date of this Act of 2005 shall earn interest equal to the actuarially assumed interest rate only.
 (2)(3) The interest shall be credited to the individual account balance of the member on an annual basis.
Act 1969 of 2005 provides:
 AN ACT TO INCREASE THE DURATION OF THE ARKANSAS STATE POLICE OFFICERS DEFERRED OPTION PLAN; AND FOR OTHER PURPOSES.
Subtitle
 AN ACT TO INCREASE THE DURATION OF THE ARKANSAS STATE POLICE OFFICERS DEFERRED OPTION PLAN.
 BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF ARKANSAS:
 SECTION 1. Arkansas Code § 24-6-306 is amended as follows:
 24-6-306. Duration.
 (a) The duration of participation in the Arkansas State Police Officers Deferred Option Plan for active state police officers shall not exceedfive (5) seven (7) years.
 (b) At the conclusion of a member's participation in the Arkansas State Police Officers Deferred Option Plan, the member shall terminate employment with the Department of Arkansas State Police and shall start receiving the member's accrued monthly retirement benefit from the State Police Retirement System.
 SECTION 2. Arkansas Code § 24-6-304(b), pertaining to the rate of return on benefits, is amended to read as follows:
 (b)(1) A Except as provided in subdivision (b)(2) of this section, a member who participates in this plan shall earn interest at a rate of two (2) percentage points below the rate of return of the investment portfolio of the State Police Retirement System, but no less than the actuarially assumed interest rate as certified by the actuary.
 (2) Any member participating in the Arkansas State Police Officers Deferred Option Plan for any period of time beyond his or her fifth complete year shall earn interest equal to the actuarially assumed interest rate for that time.
 (2)(3) The interest shall be credited to the individual account balance of the member on an annual basis.
In my opinion, these acts conflict. With respect to interest earned on the accounts of participants in the Arkansas State Police Officers Deferred Option Plan, Act 1024 draws a clear distinction between members who began participation prior to the effective date of the act and those who began or will begin to participate after the effective date of the act. The former group will earn interest at a rate two percentage points below the rate of return of the State Police Retirement System's investment portfolio or the actuarially assumed interest rate,[1]
whichever is higher. The latter group will earn interest at the actuarially assumed interest rate. Act 1969 sets forth a different formula, providing that for the first five years of their participation, all members will earn interest at the greater of either two percentage points below the rate of return of the System's portfolio or the actuarially assumed interest rate and that for the final two years of their participation, all members will earn interest at the actuarially assumed interest rate. It would appear that under normal circumstances the formula set forth in Act 1024 would impose upon the System a lower obligation to pay interest than would the formula set forth in Act 1969 — a fact that I assume has prompted your concern that Act 1969 not be read as repealing Act 1024 by implication.
In determining how to address the tension between these two acts, I am guided by several principles of statutory construction. First, the cardinal rule is to give full effect to the will of the legislature. Flowers v. Norris, 347 Ark. 760,765, 68 S.W.3d 289, 292 (2002) ("It is . . . axiomatic that in statutory interpretation matters, we are first and foremost concerned with ascertaining the intent of the General Assembly.") (citing State v. Havens, 337 Ark. 161, 987 S.W.2d 686 (1999)). A statute is construed just as it reads, giving the words their ordinary and usually accepted meaning in common language.Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). Nothing is taken as intended that is not clearly expressed. State exrel. Sargent v. Lewis, 335 Ark. 188, 979 S.W.2d 894 (1998).
In addition, legislative enactments that are alleged to be in conflict must be reconciled, read together in a harmonious manner, and each given effect, if possible. Gritts v. State,315 Ark. 1, 864 S.W.2d 859 (1993); City of Fort Smith v. Tate,311 Ark. 405, 844 S.W.2d 356 (1993). Repeal by implication is not favored and is "never allowed except where there is such an invincible repugnancy between the former and later provisions that both cannot stand together." Donoho v. Donoho,318 Ark. 637, 887 S.W.2d 290 (1994). This is especially so in the case of acts passed during the same session of the General Assembly.Uilkie v. State, 309 Ark. 48, 827 S.W.2d 131(1992); Love v.Hill, 297 Ark. 96, 759 S.W.2d 550 (1988). When two legislative enactments are in such irreconcilable conflict that both cannot stand together, the conflicting provisions of one are repealed by implication by the other. Donoho, 318 Ark. 637; Ward SchoolBus Mfg., Inc. v. Fowler, 261 Ark. 100, 547 S.W.2d 394 (1977).
Moreover, a general statute normally does not apply where there is a specific statute governing a particular subject matter.Donoho v. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). Ordinarily, the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act. Daniels v. City ofFort Smith, 268 Ark. 157, 594 S.W.2d 238 (1980). This rule also applies to conflicting acts passed in the same legislative session, Sargent v. Cole, 269 Ark. 121, 598 S.W.2d 749 (1980), although, in such a case, the ordinary presumption that the legislature did not intend a repeal by implication is strengthened. Merchants' Transfer Warehouse Co. v. Gates,180 Ark. 96, 21 S.W.2d 406 (1929). With respect to such acts, A.C.A. § 1-2-207(b) provides:
 When more than one (1) act concerning the same subject matter is enacted by the General Assembly during the same session, whether or not specifically amending the same sections of the Arkansas Code or an uncodified act, all of the enactments shall be given effect except to the extent of irreconcilable conflicts in which case the conflicting provision of the last enactment shall prevail. The last enactment is the one which the Governor signed last.
The presumption, then, is that two acts passed during the same session that address the same subject were actuated by the same policy and that both were intended to be given effect. SeeSutherland on Statutory Construction, § 23.17 (5th ed., 1993); Adams v. Arthur, 969 S.W.2d 598, 333 Ark. 53 (1998);Horn v. White, 225 Ark. 540, 284 S.W.2d 122 (1955). However, the Arkansas Supreme Court has held that this rule must yield if doing so is necessary in order to effectuate legislative intent.Horn, supra. Moreover, the court has held that if two acts that are passed at the same legislative session contain conflicting clauses, the whole record of legislation will be examined to ascertain the legislative intent, and such intent, if ascertained, will be given effect, regardless of priority of enactment. Id.
With respect to the Arkansas Code Revision Commission's determination that Act 1969 superseded Act 1024, I will note that the Arkansas Supreme Court will not allow a drafting error or codification error to circumvent legislative intent. Rosario v.State, 319 Ark. 764, 894 S.W.2d 888 (1995); Cox v. City ofCaddo Valley, 305 Ark. 155, 806 S.W.2d 6 (1991).
Applying the above principles, I believe the Code Revision Commission was correct in concluding that Act 1969 repealed Act 1024 by implication. I must respectfully disagree with your suggestion that the two acts can "peacefully co-exist." They set forth different, irreconcilable formulas for calculating interest on the accounts of participating DROP members, and to this extent they are "invincibly repugnant" to each other, see Donoho,supra, supporting a conclusion that the later legislation supersedes the earlier. If a remedy for this situation is warranted, it must be undertaken by further legislative action.
Finally, I do not consider it significant that Senator Hill's amendment of his bill on March 18, 2005 recited A.C.A. § 24-6-304
as it read prior to its amendment on that same date pursuant to Act 1024. Notwithstanding the fact that the governor signed Act 1024 of March 18, 2005, the act did not contain an emergency clause and it consequently did not take effect until 90 days after the legislature adjourned sine die. See Ark. Op. Att'y Gen. No. 2005-110. Accordingly, it was completely appropriate for Senator Hill to amend the law in effect at the time he introduced SB 155, which eventually became Act 1969, as opposed to an act that had not yet taken effect. Moreover, even if this were not the case, I do not believe it would be warranted to suggest that Senator Hill's amendment may possibly have been "inadvertent." The substantive provisions of Act 1969 are clear and presumptively reflect its sponsor's intentions. Because this legislation was enacted later in time than Act 1024, I believe it must be given effect.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] I am informed that the "actuarially assumed interest rate" is sometimes referred to as the "investment earnings assumption" and that it is commonly understood to mean the actuarially assumed rate of return on investments of the fund. It typically factors into determining employer contributions to the retirement system. See, e.g., A.C.A. §§ 24-4-202(e)(1) (Supp. 2005) (addressing employer contributions under the Arkansas Public Employees' Retirement System) and 24-8-809(c)(1)(A) (Supp. 2005) (contributions under the Arkansas District Judge Retirement System).